**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Wesley Simmons and Sharon Simmons, husband and wife, | No. CV-06-701-PCT-DGC |
| Plaintiffs, | **ORDER** |
| vs. | |
| Navajo County, et al., | |
| Defendants. | |

Plaintiffs have filed a motion for partial summary judgment and Defendants have filed a motion summary judgment. Dkt. ##175, 179. Responses and replies have been filed. Dkt. ##185, 189, 194-95. The requests for oral argument will be denied because the parties have filed voluminous briefs and exhibits and oral argument will not aid the Court's decision. *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999). For reasons explained in this order, the Court will deny Plaintiffs' motion and grant Defendants' motion.[1]

---

[1] The parties are reminded that the Court's Local Rule of Civil Procedure 7.1(b)(1) requires all pleadings and motions to be "in a fixed-pitch type size no smaller than ten (10) pitch (10 letters per inch) or in a proportional font size no smaller than 13 point, including footnotes." The parties' memoranda do not comply with this rule.

**I.     Background.**

Tragically, Plaintiffs' son, Jasper Simmons, committed suicide by hanging himself with medical gauze while detained at the Navajo County Jail.  Plaintiffs claim that negligence and civil rights violations caused their son's death.  Plaintiffs' claims are based on allegations that Jasper's cell had not been adequately searched for the gauze used for the suicide, jail policy required checks on suicide watch detainees every fifteen minutes and jail staff had last observed Jasper more than one hour before he was found dead, the jail was understaffed, jail staff was not properly trained, and Jasper did not receive adequate physical and mental health care or reasonable accommodations for his depression.  Plaintiffs have sued Navajo County and its Board of Supervisors, the County Sheriff, nine officers employed at the jail, and jail medical staff personnel.  Dkt. #1 at 8-28.

**II.    Summary Judgment Standard.**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III.   Officers Stump, Robinson, Ratcliff, Nabors, Crandell, and Peterson.**

Defendants argue that Plaintiffs cannot demonstrate facts sufficient to establish the liability of any individual Defendant, and summary judgment therefore is appropriate under *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  Dkt. #179 at 5-6.  Plaintiffs state that they have agreed to dismiss Defendants Stump, Robinson, Ratcliff, Nabors, Crandell, and Peterson (Dkt. #175 at 3 n.1), but Plaintiffs have not filed a notice of dismissal.

Summary judgment must be granted to Defendants if Plaintiffs "fail[] to make a showing sufficient to establish the existence of an element essential to [Plaintiffs'] case, and on which [Plaintiffs] will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23.

Because Plaintiffs have made no such showing with respect to the alleged liability of Officers Stump, Robinson, Ratcliff, Nabors, Crandell, and Peterson, the Court will grant summary judgment in their favor. *See id.*

**IV.  The State Law Claims.**

Counts one through six of the complaint assert state law negligence claims. Dkt. #1 at 8-28, ¶¶ 88-99. Counts ten and eleven assert state law claims of disability discrimination. *Id.* ¶¶ 107-14. Prior to filing suit, Plaintiffs served a notice of claim on Defendants pursuant to A.R.S. § 12-821.01. Defendants seek summary judgment on the state law claims on the ground that the notice of claim failed to comply with the statute. Dkt. #179 at 16-17.

**A.  Did Defendants Preserve the Insufficiency of Notice of Claim Defense?**

Plaintiffs assert that the insufficiency of notice of claim defense has not been pleaded and was "disallowed" in the Court's order denying Defendants leave to amend their answer to assert insufficiency of the notice as an affirmative defense. Dkt. #185 at 15. Defendants argue that the pleadings are sufficient to allow the Court to render a summary judgment ruling on the notice of claim issue. Dkt. #194 at 9. The Court agrees.

Paragraph 19 of the complaint alleges that Plaintiffs served a formal claim upon all Defendants "in accordance with Arizona law" and that "[a]ll conditions precedent to this lawsuit, including exhaustion of formal claims, has been timely completed." Dkt. #1 at 1-28, ¶ 19. In their answer, Defendants admitted that Plaintiffs submitted a notice of claim prior to filing the complaint, but denied "the remaining allegations contained in paragraph 19 of the [c]omplaint." Dkt. #54 ¶ 19. The remaining allegations, of course, are that the notice of claim accorded with Arizona law and that all other conditions precedent to suit were satisfied. Defendants' denial of these allegations joined the issue of whether the notice of claim is sufficient. *See* Fed. R. Civ. P. 8(b) (requiring a party to assert defenses and denials in "short and plain terms"); *Baisten v. Peters*, No. 91 C 7673, 1993 WL 39724, at *1 (N.D. Ill. Feb. 12, 1993) ("[N]otice pleadings need only apprise a party of the nature of a claim or defense to satisfy the pleading requirements.").

The fact that Defendants were denied leave to amend their answer to assert the notice

1. issue as an affirmative defense does not change this conclusion. The proposed amendment
2. merely repeated the denials of paragraph 19 of Defendants' answer. *See S.H.P. Vevelstad*
3. *v. Flynn*, 230 F.2d 695, 703 (9th Cir. 1956) (affirmative defenses are "merely denials in
4. affirmative form of the allegations of the complaint"); *Bobbitt v. Victorian House, Inc.*, 532
5. F. Supp. 734, 738 (N.D. Ill. 1982) (striking affirmative defense because it did "nothing more
6. than deny plaintiff's jurisdictional statement, echoing Paragraph 1 of defendants' Answer");
7. *Baisten*, 1993 WL 39724, at *1 ("[A] 'so-called' affirmative defense that is surplusage – one
8. that raises matters already at issue under a denial – may be stricken.").

9. Contrary to Plaintiffs' assertion, the Court did not previously "disallow" the notice
10. of claim defense. The Court denied Defendants' motion for leave to amend because it was
11. untimely and Defendants failed to show good cause for the delay. *See* Dkt. #110. The Court
12. did not determine whether the notice of claim issue was joined by the pleadings. That issue
13. was not raised by the parties. *See* Dkt. ##71, 82, 95.

**B.     Does the Notice of Claim Comply with the Statute?**

15. A.R.S. § 12-821.01 requires anyone with a claim against a public entity or public
16. employee to file a notice of the claim with the entity or employee prior to initiating suit.
17. *See Deer Valley Unified Sch. Dist. v. Houser*, 152 P.3d 490, 491 ¶ 1 (Ariz. 2007) (en banc).
18. The statute provides that the notice "shall contain facts sufficient to permit the public entity
19. or public employee to understand the basis upon which liability is claimed." A.R.S. § 12-
20. 821.01(A). The statute further provides that the notice shall "contain a specific amount for
21. which the claim can be settled and the facts supporting that amount." *Id*. "The purpose of
22. [the] statute is to give [the public entity or public employee] notice of a claim, an opportunity
23. to assess the claim and the potential for liability, and a chance to settle the claim before an
24. action is filed in court." *Barth v. Cochise County*, 138 P.3d 1186, 1189 ¶ 9 (Ariz. Ct. App.
25. 2006); *see Houser*, 152 P.3d at 492 ¶ 6.

26. Plaintiffs' notice of claim includes a request for $20,000,000. Dkt. #181-8 at 44.
27. Defendants argue that the notice fails to comply with the statute because it provides an
28. insufficient factual basis for this lump sum amount. Dkt. #179 at 16-17. In response,

Plaintiffs assert only that "the lengthy claim was sufficient." Dkt. #185 at 15 (citing Dkt. #82).

The statute expressly provides that a notice of claim "shall . . . contain a specific amount for which the claim can be settled and *the facts supporting that amount*." A.R.S. § 12-821.01(A) (emphasis added). This obligation "requires that claimants explain the amounts identified in the claim by providing the government entity with a factual foundation to permit the entity to evaluate the amount claimed." *Houser*, 152 P.3d at 493 ¶ 9. Requiring claimants to state the facts in this fashion "ensures that claimants will not demand unfounded amounts that constitute 'quick unrealistic exaggerated demands.'" *Id.* (citation omitted).

Plaintiffs' notice of claim identifies three general categories of damages: loss of love, affection, consortium, and other forms of emotional distress; loss of economic support; and funeral costs. Dkt. #181-7 at 9. The notice does not address the value of these claims. The notice does not explain the value attached by Plaintiffs to their emotional distress or how that value was determined. Nor does the notice explain the dollar value of the loss of support claim – generally, an economic calculation based on the anticipated support that would have been provided by Jasper. The letter does not even state the amount of funeral costs. The only mention of a value for Plaintiffs' claims is found in the last sentence of the notice: "Wesley and Sharon Simmons request 20 million dollars as compensation for the loss of their son, based on the claims identified in this claim letter." *Id.* at 44. The notice contains "no indication as to how Plaintiffs reached the figure of $20,000,000, as opposed to an other conceivable settlement value." *Bamonte v. City of Mesa*, No. CV-06-01860-PHX-NVW, 2007 WL 2022011, at *6 (D. Ariz. July 10, 2007).

The notice fails to satisfy the "clear and unequivocal" requirements of Arizona law. *Houser*, 152 P.3d at 493 ¶ 9. Although the notice contains "a specific amount for which the claim can be settled," it does not set forth "the facts supporting that amount" as required by the claim statute. *See* A.R.S. § 12-821.01(A). This latter requirement is not mere window dressing. It is a "mandate[]" that "ensure[s] that government entities will be able to realistically consider a claim." *Houser*, 152 P.3d at 493 ¶ 9. Absent the factual basis for the

settlement amount, Defendants could not properly evaluate Plaintiffs' claim. *Id.*; *see also Campos v. City of Glendale*, No. CV-06-610-PHX-DGC, 2007 WL 3287586, at *3 (D. Ariz. Nov. 5, 2007); *Estrada v. City of San Luis*, No. CV-07-1071-PHX-DGC, 2007 WL 4025215, at *5 (D. Ariz. Nov. 15, 2007).

The Arizona Supreme Court has held that "[c]laims that do not comply with A.R.S. § 12-821.01.A are statutorily barred." *Houser*, 152 P.3d at 493 ¶ 6; *see also* ¶ 23. Because Plaintiffs' state law claims are barred, the Court will grant summary judgment on those claims. The Court therefore need not address Plaintiffs' argument that Defendants were negligent as a matter of law. *See* Dkt. #175.

## V.     The § 1983 Claims.

Counts seven through nine of the complaint assert constitutional violations under 42 U.S.C. § 1983. Plaintiffs allege that Defendants were deliberately indifferent to Jasper's welfare. Dkt. #1 at 8-28, ¶¶ 100-06.

### A.     Plaintiffs' Motion.

Plaintiffs seek summary judgment on the issue of deliberate indifference. Dkt. #175. The Eighth and Fourteenth Amendments prohibit jail personnel from being deliberately indifferent to a substantial risk that an inmate will commit suicide. *See Bowens v. City of Atmore*, 171 F. Supp. 2d 1244, 1252 (S.D. Ala. 2001). Deliberate indifference occurs when a person consciously disregards a substantial risk of harm of which he is aware. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).[2]

Plaintiffs assert that Sheriff Butler, Commander Burke, Lieutenant Reynolds, Sergeant Warren, Dr. Kartchner, and nurses Jones and Greason "were all 'deliberately indifferent' to the suicidal threat and care of [the decedent]." Dkt. #175 at 16. In support of this assertion, Plaintiffs' counsel cites his entire statement of facts – all 183 paragraphs. *See id.* (citing Dkt.

---

[2]"Claims by pretrial detainees are analyzed under the Fourteenth Amendment Due Process Clause, rather than under the Eighth Amendment. Because pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, however, [courts] apply the same standards." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998); *see Bell v. Wolfish*, 441 U.S. 520 (1979).

#174 ¶¶ 1-183). Counsel makes no attempt to specify which paragraphs support a finding of deliberate indifference with respect to any particular defendant, choosing instead to assert all facts against all defendants and leave it to the Court to sort out the differences. This approach is not only inconsiderate of the Court's time, it is contrary to law.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, *and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.*" *Celotex*, 477 U.S. at 323 (emphasis added). Local Rule of Civil Procedure 56.1 expressly states that a motion for summary judgment "shall include citations to the *specific paragraph* in a statement of facts that supports factual assertions made in the [motion]." LRCiv 56.1(e) (emphasis added). The principal purpose of this rule, of course, is to obviate the need for the Court to scour the record in search of facts relevant to summary judgment. *See Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). As other courts have noted, "'judges are not like pigs, hunting for truffles buried in briefs.'" *Independent Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (citation omitted).

Plaintiffs have not met their summary judgment burden of demonstrating the absence of a triable issue with respect to the deliberate indifference for any particular defendant. Moreover, for reasons stated in the next section of this order, the Court's review of the record suggests that Plaintiffs' motion for partial summary judgement on the issue of deliberate indifference is not well taken. The Court accordingly will deny Plaintiffs' motion.

**B.   Defendants' Motion.**

Defendants argue that summary judgment is appropriate under *Celotex* because Plaintiffs cannot present facts giving rise to liability for each individual Defendant. Dkt. #179 at 5-6. Defendants further argue that the individual Defendants are entitled to qualified immunity and that there is no basis for municipal liability under § 1983. *Id.* at 6-14.

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims[.]" *Celotex*, 477 U.S. at 323-24. Once the moving party has met its initial summary judgment burden, as Defendants have done in this case, the opposing

1  party "must set forth *specific facts* showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). Reliance upon the mere allegations of the party's pleadings is not sufficient to survive summary judgment. *See id.*; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

Plaintiffs' response, like their motion for summary judgment, does not comply with Local Rule 56.1(e). Plaintiffs do not address the essential facts of the case, but instead rely generally on the allegations of the complaint and their voluminous statements of facts. Dkt. #185 at 2-5. Indeed, in support of their opposition Plaintiffs cite often to their *entire* statement of facts and their *entire* opposition to Defendants statement of facts, a collection of documents spanning 98 pages and 630 numbered paragraphs (Dkt. ##174, 186). *See* Dkt. #185 at 4-5. Plaintiffs again fail to organize their citations by defendant, apparently assuming that the Court will sort through 630 paragraphs – and some 12 inches of related exhibits – to determine which evidence establishes a question of fact with respect to which defendants. As noted above, however, the Court is not obligated to "'scour the record in search of a genuine issue of triable fact.'" *Keenan*, 91 F.3d at 1279 (citation omitted). Plaintiffs, as the nonmoving parties, have the burden of identifying "'with reasonable particularity the evidence that precludes summary judgment.'" *Id.* Plaintiff has failed to satisfy this burden, but that is not the only basis for the Court's ruling. The Court has also made its best effort to identify the relevant evidence from Plaintiffs' voluminous filings, and concludes that Defendants are entitled to summary judgment.

### 1. Sergeant Warren.

The following facts are undisputed. Jasper was arrested and brought to the Navajo County Jail on May 20, 2005. Dkt. ##181 & 186 ¶¶ 2, 5. Eight days later he tried to kill himself by cutting his wrists with a razor blade. His wounds were cleaned and dressed with medical gauze and he was placed on Level I suicide watch. *Id.* ¶¶ 41-44. Following an evaluation by jail medical staff, Jasper was moved from Level I to Level II suicide watch on June 8, 2005. *Id.* ¶¶ 122.

/ / /

On July 2, 2005, Sergeant Warren had the assignment of conducting suicide welfare checks at the jail beginning at approximately 11:00 a.m. *Id.* ¶¶ 270, 332. Sergeant Warren checked on Jasper four times between 11:00 a.m. and 2:30 p.m., at which time he took Jasper out of his cell for a family visit. *Id.* ¶¶ 271, 274. Sergeant Warren returned Jasper to his cell at 3:50 p.m. and served him dinner at 4:35 p.m. *Id.* ¶¶ 299. At approximately 5:46 p.m., one hour and eleven minutes after he was last checked by Sergeant Warren, Jasper was found dead in his cell. *Id.* ¶¶ 306-11; *see* Dkt. #181-3 at 34-35 (Jail Logs).

A jury might reasonably conclude from these facts that Sergeant Warren was negligent in not checking on Jasper's welfare more often, but negligence is not sufficient for liability under § 1983. *See Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). "The question is not whether [Sergeant Warren] did all [he] could have, but whether [he] did all the Constitution requires." *Rellergert v. Cape Girardeau County*, 924 F.2d 794, 797 (8th Cir. 1991). The Constitution requires that Sergeant Warren not act with deliberate indifference, that is, that he not consciously disregard an excessive risk that Jasper would commit suicide absent more frequent checks. *See Farmer*, 511 U.S. at 836-39. Even when construed in Plaintiffs' favor, the evidence in this case does not support a finding of deliberate indifference by Sergeant Warren.

The undisputed evidence shows that Sergeant Warren did not ignore Jasper. He allowed Jasper to call home and visit with his family. Dkt. ##181 & 186 ¶¶ 286. He allowed the family visit on July 2, 2005, to extend beyond the normal time limits. *Id.* ¶¶ 248. And he checked on Jasper five times between 11:00 a.m. and 4:35 p.m. that day. *Id.* ¶¶ 271, 274, 299, 332. "Indifference is apathy or unconcern." *Rellergert*, 924 F.2d at 797. Sergeant Warren's conduct reflects concern for inmate welfare and a lack of deliberate indifference. *See Cagle v. Sutherland*, 334 F.3d 980, 989-90 (11th Cir. 2003).

Moreover, while Jasper's placement on Level II suicide watch indicated he remained a suicide risk, there is no evidence that Sergeant Warren knew Jasper had a specific plan to commit suicide on July 2, 2005. Dkt. ##181 & 186 ¶¶ 316-18. Nor have Plaintiffs produced evidence that Sergeant Warren knew Jasper – whose razor wounds had healed – had medical

- 9 -

gauze that he could use to harm himself. *Id.* ¶¶ 261-63, 326-27; *see Farmer*, 511 U.S. at 837 (deliberate indifference is judged only on facts the officer actually knew); *Cagle*, 334 at 989 (finding no deliberate indifference where the defendant was unaware of the implement used to commit suicide). In fact, it is undisputed that Sergeant Warren was not aware of Jasper's prior suicide attempt on May 28, 2005. Dkt. ##181 & 186 ¶¶ 260.

Plaintiffs' essential contention is that Sergeant Warren failed to check on Jasper every fifteen minutes as required by jail policy. Plaintiffs assert that the jail was overcrowded and chronically understaffed, that there were many inmates on suicide watch on July 2, 2005, and that the jail was short three detention officers that day. But these assertions all lead to the same essential contention – that Sergeant Warren failed to check on Jasper every 15 minutes. Had there been more staffing or less crowding, Plaintiffs contend, then someone could have checked on Jasper at the intervals required by jail policy. Similarly, Plaintiffs assert that the cell in which Jasper was held was not a proper suicide watch cell because it lacked a camera, again suggesting that Sergeant Warren or others could have checked on Jasper more often with the aid of a camera. Plaintiffs further contend that the cell had protrusions that could be used to hang oneself, but provide no evidence that Sergeant Warren knew of this fact.

As already noted, although Sergeant Warren's failure to check on Jasper every 15 minutes could support a verdict for negligence, that is not enough for § 1983 liability. Plaintiffs must prove deliberate indifference – that Sergeant Warren actually knew of an excessive risk to Jasper's safety and yet consciously chose to disregard the risk. Sergeant Warren's failure to "recognize that closer observation was needed suggests only negligence, if anything, and does not demonstrate the kind of deliberate conduct or callous indifference necessary to support a § 1983 claim." *Snyder v. Baumecker*, 708 F. Supp. 1451, 1461 (D.N.J. 1989); *see Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 398 (5th Cir. 2000) (deputy's failure to follow jail policy requiring fifteen-minute checks did not constitute deliberate indifference); *Gregoire v. Class*, 236 F.3d 413, 419 (8th Cir. 2000) (jail official not deliberately indifferent in waiting more than a half hour to check on the decedent after receiving specific warning that the decedent was going to kill himself); *Rellergert*, 924 F.2d

1 at 797 (allowing the decedent to remain out of sight with a bed sheet did not amount to
2 deliberate indifference).

3 Plaintiffs' reliance on *Camps v. City of Warner Robins*, 822 F. Supp. 724 (M.D. Ga.
4 1993), is misplaced. The plaintiffs in *Camps*, unlike Plaintiffs in this case, presented
5 evidence sufficient to support a finding of deliberate indifference. The evidence showed that
6 despite receiving specific information that the decedent was in imminent danger of
7 committing suicide, jail officials placed the decedent in the general population with access
8 to the means to kill himself and checked on him only once over a thirty-one hour period. The
9 evidence also showed that the officials denied requests from the decedent's parents to visit
10 with their son and have a pastor, doctor, or mental health worker talk to him. 822 F. Supp.
11 at 728. No such evidence has been presented in this case.

12 In summary, Plaintiffs have failed to present evidence from which a jury reasonably
13 could conclude that Sergeant Warren was deliberately indifferent to Jasper's constitutional
14 rights. The Court will therefore grant summary judgment in favor of Sergeant Warren. *See*
15 *Celotex*, 477 U.S. at 322-23.

### 2. Dr. Kartchner.

17 Plaintiffs assert that "Dr. Kartchner provided no supervision whatsoever, but knew
18 that inmates were on suicide watch." Dkt. #185 at 4. Plaintiffs cite no evidence in support
19 of this assertion. Nor have Plaintiffs otherwise identified evidence sufficient to create a
20 triable issue as to whether Dr. Kartchner was deliberately indifferent to Jasper's
21 constitutional rights. The Court will grant summary judgment in favor of Dr. Kartchner. *See*
22 *Celotex*, 477 U.S. at 322-23.

### 3. Nurses Jones and Greason.

24 Plaintiffs have presented evidence that nurses Jones and Greason did not properly
25 evaluate Jasper on a daily basis, did not complete a suicide risk assessment, failed to inform
26 other jail staff about Jasper's risk of suicide, and failed to ensure that the medical gauze used
27 to dress Jasper's wrist wounds had been removed from his cell. Dkt. #185 at 3-5 (citing Dkt.
28 #186 ¶¶ 51, 61, 90, 122, 135, 171, 207). Plaintiffs contend that Jones and Greason failed to

1  take these measures in violation of jail policy. *Id.* at 8. As noted above, however, violations
2  of jail policy are not alone sufficient for liability under § 1983.

3  While these facts could support a verdict of negligence, Plaintiffs have failed to
4  present evidence from which a jury reasonably could conclude that nurses Jones and Greason
5  were deliberately indifferent to Jasper's constitutional rights. Nurses Jones and Greason, like
6  Sergeant Warren, did not ignore Jasper.

7  Nurse Jones saw Jasper six times between May 31 and June 27, 2005. She changed
8  the dressing on his wrist wound, kept him on suicide watch status, and placed him on the list
9  to see a psychiatric counselor. Dkt. ##181 & 186 ¶¶ 79, 87, 94, 122, 162, 207; *see* Dkt.
10 #181-2 at 31-32 (Progress Notes). As Plaintiffs acknowledge, this conduct shows that nurse
11 Jones was concerned about Jasper's emotional state. Dkt. #186 ¶ 207.

12 Nurse Greason saw Jasper everyday when she gave him his medication and changed
13 his dressing. Dkt. ##181 & 186 ¶¶ 51, 74, 80, 88, 145. She saw him on July 1, 2005, noting
14 that he was cheerful and had denied any thoughts of harming himself. *Id.* ¶¶ 229. She
15 checked on him again the next day and thought that he did not seem depressed. *Id.* ¶¶ 273.

16 Plaintiffs fault nurses Jones and Greason for not properly evaluating Jasper on a daily
17 basis (*see id.* ¶¶ 231, 273), but their failure to do so constitutes, at most, negligence. The
18 Court will therefore grant summary judgment in their favor.

19 **4.   Lieutenant Reynolds, Commander Burke, and Sheriff Butler.**

20 Plaintiffs have sued Sergeant Warren's supervisors – Lieutenant Reynolds,
21 Commander Burke, and Sheriff Butler – in their individual capacities. Individual liability
22 under § 1983 "arises only upon a showing of personal participation by the defendant. A
23 supervisor is only liable for constitutional violations of his subordinates if the supervisor
24 participated in or directed the violations, or knew of the violations and failed to act to prevent
25 them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

26 Plaintiffs assert that Sergeant Warren's supervisors knew that the jail was understaffed
27 and yet took no corrective action. Dkt. ##185 at 4. Plaintiffs further assert that the
28 supervisors failed to train jail staff in the proper monitoring of suicidal inmates. Dkt. #1 at

8-28, ¶ 104. Plaintiffs have identified no evidence in support of these assertions. The Court accordingly will grant summary judgment in favor of Lieutenant Reynolds, Commander Burke, and Sheriff Butler in their individual capacities. *See Celotex*, 477 U.S. at 322-23.[3]

### 5. Navajo County, the Board of Supervisors, and Sheriff Butler.

Plaintiffs assert § 1983 claims against Navajo County, its Board of Supervisors, and Sheriff Butler in his official capacity under the theory of municipal liability. Municipal liability can result from the unconstitutional actions or omissions of the municipality itself or the municipality's final policymaker. *See Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *City of Canton v. Harris*, 489 U.S. 378, 388-90 (1989).

In this case, Plaintiffs do not challenge the adequacy of the suicide prevention policy adopted by the municipal Defendants. *See* Dkt. #185 at 10. Rather, they contend that, as a matter of custom and practice, the policy was not followed. *Id.* at 10-13. The Court need not address this contention because without an unconstitutional act by an individual Defendant there can be no municipal liability under § 1983. *See City of L.A. v. Heller*, 475 U.S. 796, 799 (1986); *Palmerin v. City of Riverside*, 794 F.2d 1409, 1414-15 (9th Cir. 1986).

## VI. The ADA Claim.

Count ten of the complaint alleges that Jasper's depression constituted a disability and that the Navajo County Jail was not readily usable by depressed inmates in violation of the Americans with Disabilities Act ("ADA"). Dkt. #1 at 8-28, ¶ 108. Plaintiffs do not address this claim in their response to Defendants' summary judgment motion. Plaintiffs instead appear to contend that Defendants violated the ADA by placing Jasper on suicide watch and thereby excluding him from the jail recreational programs. Dkt. #185 at 14-15.

The ADA provides that "no qualified individual with a disability shall, *by reason of such disability*, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be discriminated against by any such entity."

---

[3] Because the Court has concluded that the individual Defendants did not commit a constitutional violation, it is not necessary to reach the issue of qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

- 13 -

42 U.S.C. § 12132 (emphasis added).  Plaintiffs have presented no evidence that Defendants excluded Jasper from recreational programs because of his depression.  Rather, the evidence uniformly shows that Defendants excluded Jasper from certain jail programs in an effort to prevent him from committing suicide.  Because Plaintiffs have presented no evidence from which a reasonable jury could conclude that Defendants discriminated against Jasper because of his depression, the Court will grant summary judgment in favor of Defendants.

**IT IS ORDERED:**

1. Plaintiffs' motion for partial summary judgment (Dkt. #175) is **denied**.
2. Defendants' motion for summary judgment (Dkt. #179) is **granted**.
3. The Clerk is directed to enter judgment accordingly.

DATED this 6th day of February, 2008.

*Daniel G. Campbell*
David G. Campbell
United States District Judge